USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/19/23

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA,

                    Plaintiff,

          - against -

LEONARDO PIÑA,

                    Defendant.

**01 Cr. 619 (VM)**

**DECISION AND ORDER**

**VICTOR MARRERO, United States District Judge.**

Defendant Leonardo Piña ("Piña") moves for reconsideration of the Court's denial of his previous motion for modification of his sentence to add supervised release. (See Dkt. No. 422.) Piña wants supervised release added to his sentence because the First Step Act of 2018 allows certain prisoners to earn time credits and use them to secure early release from incarceration, but only if their sentences include a term of supervised release following imprisonment. See 18 U.S.C. § 3624(g)(3). For the reasons below, the Court **GRANTS** the request for reconsideration but again **DENIES** the underlying motion.

## I.    BACKGROUND

### A.    PIÑA'S GUILTY PLEA AND SENTENCE

Piña pleaded guilty in February 2018 to committing a violent crime in aid of racketeering activity in violation of

18 U.S.C. § 1959(a)(3).[1] (See Plea Transcript, Dkt. No. 354 at 13.) In September 2018, the Court sentenced him to 108 months' imprisonment. (See Judgment, Dkt. No. 376 at 2.) The Court did not impose supervised release as part of the sentence "in light of the fact that the defendant is an illegal alien and will be deported upon release." (Sentencing Transcript, Dkt. No. 377 at 12.)[2] His projected release date is August 11, 2024. See Find an Inmate, Bureau of Prisons, https://www.bop.gov/inmateloc/ [https://perma.cc/2GWE-RFW2] (last visited Dec. 19, 2023).

B.    THE FIRST STEP ACT OF 2018

A few months after Piña was sentenced, the First Step Act of 2018 (the "FSA") was signed into law. See First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018). Two aspects of the FSA are relevant here.

---

[1] This offense is an "aggravated felony" for the purposes of the Immigration and Nationality Act. See 8 U.S.C. § 1101(a)(43)(F) (defining "aggravated felony" as a crime of violence, as defined in 18 U.S.C. § 16); 18 U.S.C. § 16(a) (defining "crime of violence" as "an offense that has an element the use, attempted use, or threatened use of physical force against the person or property of another"); 18 U.S.C. § 1959(a)(3) (criminalizing "assault with a dangerous weapon or assault resulting in serious bodily injury").

[2] The Federal Sentencing Guidelines provide, "The court ordinarily should not impose a term of supervised release in a case in which supervised release is not required by statute and the defendant is a deportable alien who likely will be deported after imprisonment." U.S. Sent'g Guidelines Manual § 5D1.1(c) (U.S. Sent'g Comm'n 2023) (amended Nov. 1, 2014).

1.    <u>Compassionate Release</u>

First, the FSA grants prisoners a new right to bring a motion for a sentence reduction, also known as a motion for compassionate release, in federal court "even if the [Bureau of Prisons] opposes the claim." <u>United States v. Feliz</u>, No. 16 Cr. 809, 2023 WL 8275897, at *3 (S.D.N.Y. Nov. 30, 2023) (quoting <u>United States v. Brooker</u>, 976 F.3d 228, 235 (2d Cir. 2020)). The FSA did so by amending 18 U.S.C. § 3582 ("Section 3582"), the statute governing modifications to an imposed term of imprisonment. <u>See</u> <u>Feliz</u>, 2023 WL 8275897, at *2 (discussing the FSA's amendment of Section 3582(c)(1)(A)). A defendant bringing a compassionate release motion under Section 3582(c)(1)(A)(i) "must show 'extraordinary and compelling reasons' warranting a sentence reduction." <u>Id.</u> (quoting Section 3582(c)(1)(A)(i)).

2.    <u>FSA Time Credits</u>

Second, the FSA provides that certain prisoners can earn time credits by participating in "recidivism reduction programs" and apply the credits "toward time in prerelease custody or supervised release." Pub. L. No. 115-391, § 101(a), 132 Stat. at 5198 (codified as 18 U.S.C. § 3632(d)(4)(C)). The effect of this provision for some prisoners is early release from incarceration and a

concomitant transition into post-release supervision. See Hurtado v. Warden, FCI Fort Dix, No. 23 Civ. 2259, 2023 WL 6785079, at *1 (D.N.J. Oct. 13, 2023) ("[T]he First Step Act provides inmates who engage in recidivism reduction training an opportunity to obtain credits to apply towards their early release.").

For a prisoner to be eligible for such an early transfer from incarceration to post-release supervision, the prisoner's sentence must include a term of supervised release. See 18 U.S.C. 3632(d)(4)(C) ("The Director of the Bureau of Prisons shall transfer eligible prisoners, as determined under section 3624(g), into prerelease custody or supervised release."); id. § 3624(g)(3) (stating that "[i]f the sentencing court included as a part of the prisoner's sentence a requirement that the prisoner be placed on a term of supervised release after imprisonment," the prisoner may be transferred to supervised release "at an earlier date, not to exceed 12 months, based on the application of time credits under section 3632"). Further, under 18 U.S.C. § 3632 ("Section 3632"), a prisoner is "ineligible to apply time credits" if he or she is "the subject of a final order of removal under any provision of the immigration laws." Section 3632(d)(4)(E)(i).

C.   PIÑA'S POST-CONVICTION MOTIONS

1.   Proposed Compassionate Release Motion

On September 30, 2020, Piña moved the Court to assign him an attorney to assist him in filing a motion for compassionate release. (See Dkt. No. 390.) The Court denied that motion, finding that Piña's "chances of success on his proposed motion for compassionate release are 'extremely slim.'" United States v. Piña, No. 01 Cr. 619, 2021 WL 364192, at *1 (S.D.N.Y. Feb. 3, 2021) (quoting Hodge v. Police Officers, 802 F.2d 58, 60 (2d Cir. 1986)). The Court reached this conclusion after considering records submitted by Piña and determining that the reasons he put forward for compassionate release did not "constitute extraordinary and compelling circumstances" justifying a sentence reduction. Id., at *1-2.

2.   Motion Regarding FSA Time Credits

a.   *Underlying Motion*

During his term of imprisonment, Piña has earned time credits under the FSA. (See Mot. for Modification of Sentence, Dkt. No. 413 [hereinafter the "motion" or "Mot."], Ex. 5.) He accordingly sought administrative relief from the Bureau of Prisons ("BOP"), asking that his credits be applied toward his early release. (See id.) The BOP denied the request,

stating that the credits "cannot be applied toward" Piña's release due to his "not having a term of supervised release to follow [his] term of incarceration." (<u>Id.</u>)

Piña then turned to this Court, making a motion — the motion he now asks the Court to reconsider — for a modification of his sentence. (<u>See</u> Mot. at 1.) He asked the Court to amend his sentence to include a term of supervised release and thereby allow his FSA time credits to be applied toward his early release. (<u>See id.</u> at 2.) Piña contended that "recent developments have led to a change in [Piña's] deportation outlook, with the possibility of remaining in the country." (<u>Id.</u> at 1.)

In a letter dated October 13, 2023, the Government opposed the motion. (<u>See</u> Dkt. No. 419.) The Government argued that since FSA time credits can also be applied "toward time in prerelease custody," Section 3632(d)(4)(C), "the defendant's facility was incorrect when it wrote . . . that the defendant could not gain the benefit of his FSA time credits simply because he was not sentenced to a term of supervised release." (Dkt. No. 419.) The Government advised that Piña was eligible to apply his credits toward placement in a residential reentry center and that Piña was in fact scheduled to report to such a reentry center in the coming days. (<u>See id.</u>) The Government argued that Piña's motion was

thus moot, as "the goal of the defendant's [m]otion — that he be made eligible to benefit from FSA time credits — has been accomplished." (Id.) The Court accordingly denied the motion as moot on October 16, 2023. (See Dkt. No. 420.)

     b.   *Request for Reconsideration*

Just days after the Court denied the motion, the Government filed a letter stating that the BOP had "advised the [U.S. Attorney's Office] that on October 13, 2023, BOP determined that the defendant is ineligible to apply his FSA time credits, either toward time in supervised release or prerelease custody, because of its understanding that the defendant is subject to a final order of removal." (See Dkt. No. 421.) Piña consequently requests reconsideration of his motion, arguing that it is no longer moot in light of the reversal by BOP of the decision to place Piña in prerelease custody. (See Dkt. No. 422.) In his submission requesting reconsideration, Piña contends that "the core issue" of his motion was "to secure the benefit of [his] FSA time credits." (Id.)

In a letter dated November 6, 2023, the Government does not oppose reconsideration of Piña's motion. (See Letter in Resp. to Def.'s Mot. for Modification of Sentence, Dkt. No. 424 [hereinafter "Opp."].) The Government, however, continues

to oppose Piña's motion, arguing that Piña is not eligible to receive the benefit of his FSA time credits. (See id.) In support of its argument, the Government attached to its letter a copy of a "Final Administrative Removal Order," apparently signed by an officer of the Department of Homeland Security ("DHS"), declaring that Piña is "deportable as an alien convicted of an aggravated felony" pursuant to the Immigration and Nationality Act and ordering that Piña "be removed from the United States." (Opp., Ex. A.)[3]

On November 27, 2023, the Court received reply papers submitted by Piña. (See Dkt. Nos. 426–27.) In those papers, Piña argues that the Final Administrative Removal Order provided by the Government is not a "final" order of removal for the purposes of Section 3632(d)(4)(E)(i) and contends that he is entitled to appear before an immigration judge before any such order could be deemed "final." (See id.)

## II.  DISCUSSION

Under these circumstances, and given that the Government does not oppose reconsideration of Piña's motion for modification of his sentence, the Court hereby **GRANTS** Piña's

---

[3] The Court notes for the record that the removal order is dated October 20, 2023 — one week *after* the BOP determined that Piña "*is* subject to a final order of removal." (Dkt. No. 421 (emphasis added); cf. Opp., Ex. A.) The record does not disclose how the BOP could have understood Piña to be subject to a final order of removal a week before any such order was apparently issued.

request for reconsideration and will turn next to the
arguments for and against the motion.[4]

Piña does not point to any statute authorizing the Court
to modify his sentence after judgment, and the Court cannot
do so absent such statutory permission. See United States v.
Petit, 541 F. Supp. 3d 304, 309 (S.D.N.Y. 2021) ("A district
court lacks the authority to alter a sentence after the time
of sentencing, except where Congress has provided
otherwise."). Indeed, Section 3582(b) provides that subject
to certain narrowly prescribed exceptions, "a judgment of
conviction that includes [a sentence to imprisonment]
constitutes a final judgment." One of the exceptions is the
compassionate release provision found in Section
3582(c)(1)(A), which allows the Court to, upon the
defendant's motion, "reduce the term of imprisonment (and
. . . impose a term of probation or supervised release . . .
that does not exceed the unserved portion of the original
term of imprisonment)." The Court therefore construes Piña's

---

[4] Before evaluating the underlying motion for modification of Piña's
sentence, the Court observes that Piña is a pro se litigant. As such, his
submissions must be held to "less stringent standards than formal
pleadings drafted by lawyers." Ferran v. Town of Nassau, 11 F.3d 21, 22
(2d Cir. 1993) (quoting Hughes v. Rowe, 449 U.S. 5, 9 (1980)). The Court
must construe Piña's submissions "liberally and interpret them 'to raise
the strongest arguments that they suggest.'" McPherson v. Coombe, 174
F.3d 276, 280 (2d Cir. 1999) (quoting Burgos v. Hopkins, 14 F.3d 787, 790
(2d Cir. 1994)). Nevertheless, pro se status "does not exempt a party
from compliance with relevant rules of procedural and substantive
law." Boddie v. N.Y. State Div. of Parole, 285 F. Supp. 2d 421, 426
(S.D.N.Y. 2003) (quoting Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983)).

motion as a request for modification of his term of imprisonment under Section 3582(c)(1)(A).[5]

Such a motion requires Piña to show "extraordinary and compelling reasons" warranting the relief he seeks. Feliz, 2023 WL 8275897, at *2 (quoting Section 3582(c)(1)(A)(i)). Section 1B1.13 of the Federal Sentencing Guidelines (the "Guidelines") governs whether "extraordinary and compelling reasons" exist in a particular case. See Feliz, 2023 WL 8275897, at *4; Section 3582(c)(1)(A) (requiring courts considering motions for compassionate release to find that the requested relief is "consistent with applicable policy statements issued by the Sentencing Commission," which promulgates the Guidelines); U.S. Sent'g Guidelines Manual § 1B1.13 (U.S. Sent'g Comm'n 2023) (amended Nov. 1, 2023) (setting forth "[p]olicy [s]tatement" with respect to motions under Section 3582).[6]

---

[5] In other words, the Court construes Piña's motion as a request for compassionate release, even though Piña does not ask for immediate release from incarceration. As the Second Circuit has explained, "compassionate release is a misnomer. [Section 3582] in fact speaks of sentence reduction. A district court could, for instance, reduce but not eliminate a defendant's prison sentence." United States v. Garcia, 505 F. Supp. 3d 328, 330 (S.D.N.Y. 2020) (quoting Brooker, 976 F.3d at 237).

[6] Defendants seeking relief under Section 3582 must also comply with an administrative exhaustion requirement. See United States v. Rengifo, 569 F. Supp. 3d 180, 187 (S.D.N.Y. 2021). Moreover, before granting relief, a court must find that the sentencing factors set forth in 18 U.S.C. § 3553(a) are "consistent with a lesser sentence than that previously imposed" and are additionally consistent with "a particular sentence reduction . . . that is also warranted by extraordinary and compelling reasons." Id. (emphasis added) (quoting Garcia, 505 F. Supp. 3d at 331). The Court need not further address these additional elements of the Section 3582(c)(1)(A) standard, given the Court's conclusion below that

Section 1B1.13 of the Guidelines ("Policy Statement 1B1.13") provides that extraordinary and compelling reasons for granting relief under Section 3582 might exist under specifically listed types of circumstances, such as where the defendant has a terminal illness or a serious and chronic medical condition, suffered the death or incapacitation of an immediate family member who cares for the defendant's minor child, or experienced physical or sexual abuse committed by the BOP or its agents. See Policy Statement 1B1.13(b)(1)-(4). The Policy Statement also contains a catch-all provision stating that a court may grant relief under Section 3582 if the defendant presents circumstances that are "similar in gravity" to the specifically listed types of extraordinary and compelling reasons, such as terminal illnesses, serious family issues, or BOP abuse. Policy Statement 1B1.13(b)(5).

Piña's motion does not provide the Court with any reason to modify his sentence that would qualify as extraordinary

---

Piña has not shown extraordinary and compelling reasons warranting a modification of his sentence. However, regarding the administrative exhaustion requirement, the Court notes that it may excuse the exhaustion requirement under certain circumstances and that the requirement is not jurisdictional. See United States v. Russo, 454 F. Supp. 3d 270, 274 (S.D.N.Y. 2020) (stating that Section 3582's exhaustion requirement is best understood as a "non-jurisdictional rule"); Sierra v. Jacquez, No. 2:22 Civ. 1509, 2022 WL 18046701, at *2 (W.D. Wash. Dec. 27, 2022) ("[R]equiring [Petitioner] to exhaust his administrative remedies would require him to perform a futile act. BOP officials have informed Petitioner that FSA time credits will not be applied . . . . There is nothing indicating the BOP will alter this position, which it argues is a correct position.").

and compelling under Policy Statement 1B1.13. He does not base his argument on any of the categories of reasons, such as medical conditions or family issues, specifically listed in the Policy Statement. Piña thus must meet the catch-all "similar in gravity" standard set forth in Policy Statement 1B1.13(b)(5), and he fails to do so.

Piña argues that his sentence should be modified to include supervised release for two reasons: because (A) without a term of supervised release included in his sentence, Piña cannot apply the FSA credits he has earned (see Mot. at 2) and (B) he has participated in rehabilitation and educational programs and maintained a positive disciplinary record while incarcerated (see id. at 1–2).

A.    PIÑA'S INABILITY TO APPLY FSA CREDITS

It is true that Piña has been unable to apply the FSA credits he has earned, but that would be the case regardless of whether the Court adds a term of supervised release to his sentence. Congress has made a policy choice to render prisoners "ineligible to apply time credits" if they are "subject [to] a final order of removal under any provision of the immigration laws." Section 3632(d)(4)(E)(i).

Piña appears to have abandoned his earlier contention that he has a chance of remaining in the United States. (See

Dkt. No. 427 at 2 (stating in reply letter that Piña wants the Court to add supervised release to his sentence so he can apply his FSA time credits and "be released into the custody of [U.S. Immigration and Customs Enforcement (ICE)] to initiate my removal proceedings to the Dominican Republic").) In other words, Piña still wants to apply his FSA credits, but he appears to concede that if he is granted early release as a result of doing so, he will be deported.

Piña tries to square this concession with the language of Section 3632 by arguing that the Final Administrative Removal Order furnished by the Government[7] is not truly "final" and thus does not render him "ineligible" to apply FSA time credits. Section 3632(d)(4)(E)(i). The Court construes Piña's motion to be advocating for an order that would set in motion the following sequence of events:

- Supervised release is added to Piña's sentence, allowing Piña to apply his FSA time credits;
- the application of Piña's FSA time credits effectively shortens his prison sentence;

_____

[7] Piña argues that the Final Administrative Removal Order is "inaccurate" but provides no evidence to support that contention; he only complains that the BOP claimed to know about the order a week before it was issued. (Dkt. No. 427 at 2.) The Court shares Piña's concern that the BOP's actions here create at least the appearance that the BOP, confronted with Piña's request to apply his FSA credits, prematurely deemed Piña as subject to a final order of removability in an effort to ensure the denial of his request. At the same time, however, Piña has not set forth any evidence that the Final Administrative Removal Order, signed by DHS and submitted to the Court by an Assistant U.S. Attorney, is inauthentic or invalid.

- Piña therefore is, earlier than he would have been otherwise, transferred to ICE custody and subjected to proceedings before an immigration judge;

- at the conclusion of those proceedings, Piña is subject to a "final order of removal," Section 3632(d)(4)(E)(i); and

- Piña is removed to the Dominican Republic earlier than he otherwise would have been.

(See Dkt. No. 427 at 2; Dkt. No. 426 at 2 (asking the Court to "grant my supervision" and order the application of Piña's FSA time credits "so that I may transfer into the custody of ICE to initiate" removal proceedings).)

Piña's belief that he is entitled to an order that would accelerate his deportation timeline is based on an erroneous reading of Section 3632. He points (see Dkt. No. 426 at 1-2) to Section 3632(d)(4)(E)(ii), which provides that noncitizen prisoners such as Piña — i.e., prisoners who seek to earn FSA time credits and are removable from the United States under 8 U.S.C. § 1227(a)(2)(A)(iii) because they were convicted of an aggravated felony — should be subject "at a date as early as practicable during the prisoner's incarceration" to proceedings under 8 U.S.C. § 1228(a) ("Section 1228(a)"). Section 1228(a) provides, in turn, that removal proceedings be conducted by an immigration judge, "except as otherwise provided in this section."

Piña apparently believes the effect of these provisions is that the Government's Final Administrative Removal Order

cannot bar him from applying his time credits, as that order was entered under 8 U.S.C. § 1228(b) ("Section 1228(b)") rather than by an immigration judge pursuant to Section 1228(a). (See Dkt. No. 426 at 1; Opp., Ex. A.) But the language "except as otherwise provided in this section" in Section 1228(a) incorporates Section 1228(b), and Section 1228(b) allows the Government, without going before an immigration judge, to determine the deportability of a person who is not lawfully admitted for permanent residence and has been convicted of an aggravated felony. And the Final Administrative Removal Order sets forth findings that Piña is not lawfully admitted for permanent residence and that he was convicted of an aggravated felony. (See Opp., Ex. A.) Finally, Section 1228(a)(1) contains a disclaimer stating that the section shall not be "construed to create any substantive or procedural right or benefit that is legally enforceable by any party against the United States or its agencies or officers or any other person." For these reasons, the Court concludes that Piña is not entitled to proceedings conducted by an immigration judge.

But even if he does have such a right, Piña ignores the provision of the First Step Act stating that he is ineligible to apply FSA time credits if he is the subject of a final order of removal under "*any*" provision of the immigration

laws. Section 3632(d)(4)(E)(i) (emphasis added). And Piña does not grapple with the legal authority suggesting that a Final Administrative Removal Order issued pursuant to Section 1228(b) *is* a "final" order of removal for the purposes of Section 3632(d)(4)(E)(i). See 8 C.F.R. § 238.1(f)(1) (providing that "[u]pon the issuance of a Final Administrative Removal Order" under Section 1228(b), a "Warrant of Removal" shall be issued). Since Piña thus cannot show that the Government's Final Administrative Removal Order is not a "final" removal order under Section 3632, it does not matter for the purposes of the instant motion whether he is entitled to some *other* proceeding pursuant to the immigration laws. In other words, even if Piña were entitled to appear before an immigration judge, an addition of supervised release to Piña's sentence would get him no closer to his goal of applying his FSA credits because such application is barred by the Final Administrative Removal Order, which Piña has not shown to be invalid.[8]

---

[8] For this reason, Piña's citation to Sierra is inapposite. That case involved a petitioner who was, unlike Piña, concededly not subject to a final order of removal; he was instead merely subject to an immigration detainer. See Sierra, 2022 WL 18046701, at *1. Although Piña appears to argue otherwise (see Dkt. No. 426 at 1–2), detainers are different than the Final Administrative Removal Order to which Piña is subject. The former are issued pursuant to 8 U.S.C. §§ 1226 and 1357. See 8 C.F.R. § 287.7(a) ("[D]etainers are issued pursuant to [8 U.S.C. §§ 1226 and 1357] and this chapter 1."). The Final Administrative Removal Order in this matter was issued under Section 1228(b), not 8 U.S.C. §§ 1226 or 1357. (See Opp., Ex. A.)

To sum up, Piña has not shown that his present inability to apply the FSA time credits he has earned is an extraordinary and compelling reason for modifying his sentence that is "similar in gravity" to the reasons listed in Policy Statement 1B1.13. Indeed, even assuming for the sake of argument that a failure by the Government to follow removal procedures to which Piña is entitled under the FSA and the immigration laws would constitute an extraordinary and compelling reason for granting relief, Piña has not shown that such a failure occurred here. And he has also failed to show in any event that the relief he seeks from the Court would accomplish what he has acknowledged is the goal of his motion — the application of his FSA time credits such that he secures early release from BOP custody.[9]

---

[9] The Court notes that Piña originally moved in the alternative for "[n]on-[r]eporting" supervised release "in the event that . . . [d]eportation is inevitable and final, in order for the FSA [t]ime [c]redits to be applied toward . . . release." (Mot. at 2.) Under non-reporting supervised release, the supervisee has "no obligation to report to or check in with United States Probation Officers as long as he [is] outside of the country." United States v. Thompson, No. 3:03 Cr. 420, 2018 WL 894030, at *1 (E.D. Va. Feb. 14, 2018), vacated on other grounds, 924 F.3d 122 (4th Cir. 2019). Regardless of whether Piña styles his request for a modification of his sentence in terms of "supervised release" or "non-reporting supervised release," the fact remains that he must demonstrate an extraordinary and compelling reason allowing the Court to modify his sentence under Section 3582 and Policy Statement 1B1.13, and he has not done so. Additionally, styling the motion as a request for "non-reporting" supervised release would not have any effect on Piña's ineligibility to apply FSA time credits as a result of the Final Administrative Removal Order, explained above.

B.  <u>PIÑA'S REHABILITATION AND GOOD BEHAVIOR</u>

Piña also argues that relief is warranted because he has rehabilitated and educated himself and demonstrated good behavior while incarcerated, but the Court cannot modify his sentence on this ground. Policy Statement 1B1.13(d) provides that "rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." The Policy Statement does say that rehabilitation can be considered in combination with other circumstances in determining whether a sentence modification is appropriate. <u>See</u> Policy Statement 1B1.13(d). But, as explained above, Piña has not presented any other extraordinary and compelling reason for modifying his sentence. His motion for modification of his sentence is accordingly **DENIED**.[10]

---

[10] The Court notes the existence of other cases in which courts granted relief similar to the relief Piña seeks here. <u>See</u> <u>United States v. Nunez-Hernandez</u>, No. 14 Cr. 20, 2023 WL 3166466, at *1 (D. Minn. Apr. 27, 2023) (granting relief under Section 3582 to add one month of supervised release to defendant's sentence); <u>United States v. Oprea</u>, No. 11 Cr. 64, 2023 WL 6958690, at *4 (D.N.H. Oct. 20, 2023) (granting relief under Section 3582 and modifying sentence to add supervised release). Those cases are distinguishable from the instant matter for two important reasons. First, the prisoners in <u>Nunez-Hernandez</u> and <u>Oprea</u> were subject only to immigration detainers rather than, like Piña here, final orders of removal. <u>See</u> <u>Nunez-Hernandez</u>, 2023 WL 3166466, at *1 (stating that upon application of defendant's FSA time credits, defendant shall "be released from BOP custody to his immigration detainer as soon as possible"); <u>Oprea</u>, 2023 WL 6958690, at *1 (stating that prisoner was the subject of an ICE detainer but was "not, however, subject to a final order of removal"). Second, the relevant court orders in <u>Nunez-Hernandez</u> and <u>Oprea</u> were issued before the recent amendments to Policy Statement 1B1.13 took effect on November 1, 2023, and courts had more discretion before the amendments took effect with respect to what constitutes an extraordinary and

### III. <u>ORDER</u>

For the foregoing reasons, it is hereby

**ORDERED** that the motion (Dkt. No. 422) filed by defendant Leonardo Piña ("Piña") for reconsideration of the Court's denial of Piña previous motion for modification of sentence to add supervised release or non-reporting supervised release ("Previous Motion," Dkt. No. 413) is hereby **GRANTED**; and it is further

**ORDERED** that the Previous Motion is hereby **DENIED**; and it is further

**ORDERED** that the Clerk of Court is respectfully directed to terminate the motion pending at Dkt. No. 422 and to mail a copy of this Decision and Order to Leonardo Piña, Reg. No. 21070-479, FCI Oakdale II, P.O. Box 5010, Oakdale, LA 71463.

**SO ORDERED.**

Dated:    19 December 2023
          New York, New York

_____
Victor Marrero
U.S.D.J.

---

compelling reason for granting relief under Section 3582. <u>See</u> <u>Feliz</u>, 2023 WL 8275897, at *2-4 (discussing effect of amendments).